**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Christopher Bunker, et al., | No. CV-24-01491-PHX-DWL |
| Plaintiffs, | **ORDER** |
| v. | |
| Douglas F McCormick, et al., | |
| Defendants. | |

The four *pro se* Plaintiffs in this action, family members who live together in Arizona (Doc. 1 at 4 ¶¶ 1-4), received unfavorable rulings in a lawsuit in California state probate court ("the State-Court Probate Action"). (*Id.* at 8 ¶ 7 ["The core of our case involves the gross violation of our constitutional right to due process by the defendant Probate Judges of the San Bernardino County Probate Court acting in complete absence of their jurisdiction to steal our property."].) Dissatisfied with those rulings, Plaintiffs filed a civil lawsuit in the United States District Court for the Central District of California ("the First Federal Action"). In their First Amended Complaint in the Federal Action, Plaintiffs sued the parties (Joseph Buccinio and Joseph Mauro), attorneys (Rose Rosado and Randal Hannah), and judicial officers (Judge Gilleece and Judge Garcia-Rodrigo) who participated in the State-Court Probate Action. (Doc. 11-2.)

Dissatisfied with the results in the First Federal Action, Plaintiffs filed this action. The 19 named defendants here include all of the defendants from the First Federal Action (*i.e.,* Buccinio, Mauro, Rosado, Hannah, Judge Gilleece, and Judge Garcia-Rodrigo), two

additional California state-court judges (Judge Mann and Judge Rogan), various attorneys who participated in the First Federal Action (Andrew Waxler, Jennifer Newcomb, David Samani, Patrik Johansson, Sarah Overton, and Lindsay Frazier-Krane), the law firms employing those attorneys (Zumbrunn Law Corporation, Lewis Brisbois Bisgaard & Smith LLP, Kaufman Dolowich Voluck LLP, and Cummings, McClorey, Davis & Acho P.L.C.), and the United States Magistrate Judge who recommended that all of Plaintiffs' claims in the First Federal Action be dismissed (Judge McCormick). (Doc. 1 at 4-5 ¶¶ 5-23.)

Plaintiffs do not allege in the complaint that the defendants are residents or citizens of Arizona or otherwise have any connection to Arizona. (Doc. 1 at 1 ¶ 1 ["[A]ll defendants . . . are residents of California or New Jersey."]; *id.* at 4-5 ¶¶ 5-23 [individual allegation as to each defendant].) Nevertheless, the complaint alleges that personal jurisdiction exists over each defendant "pursuant to the 'national contacts' test articulated in *First Tennessee Bank N.A. v. Kinny*, 2014 WL 12573522 (D. Ariz. Feb. 5, 2014.)" (*Id.* at 3 ¶ 5.)[1] As for venue, the complaint acknowledges that "[t]he events giving rise to this action primarily occurred in California state and federal courts" but contends that because "many of the defendants hold positions of authority" in California, "[b]ringing this action in any California federal court would raise serious concerns about impartiality and fairness" and thus "[t]his case presents extraordinary circumstances that justify venue in the District of Arizona." (*Id.* at 3 ¶¶ 4, 4(a).)

These developments form the backdrop for a host of motions now pending before the Court, which are addressed below.

…

…

---

[1] The case cited in the complaint does not appear to exist. The decision appearing at 2014 WL 12573522 is *Parsons v. JPMorgan Chase Bank*, which comes from the Eastern District of Texas and has nothing to do with personal jurisdiction. Additionally, a Westlaw search for cases from anywhere in the Ninth Circuit involving a party with the name "Kinny" returned no search results. The only District of Arizona case that has First Tennessee Bank in the caption is *Finney et al v. First Tennessee Bank et al*, 2:12-cv-01249-JAT. No order in that case issued on February 5, 2014, and although four orders from that case appear on Westlaw, none of them appear to address personal jurisdiction.

I. The First Motion To Dismiss

### A. **The Parties' Arguments**

Three defendants (Waxler, Newcomb, and Kaufman Dolowich Voluck LLP) have filed a motion to dismiss for lack of personal jurisdiction, for failure to state a claim, and for lack of subject-matter jurisdiction. (Doc. 11.) Although Plaintiffs filed a lengthy response brief that touches on a wide array of topics and legal doctrines, Plaintiffs' only fleeting argument on the issue of personal jurisdiction is that, pursuant to *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945), and *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985), "jurisdictional rules must not be applied to make litigation so gravely difficult and inconvenient that a party unfairly is at a severe disadvantage in comparison to his opponent." (Doc. 38 at 8.) In reply, Defendants argue that although "Plaintiffs insist they 'have conclusively shown that this Court has jurisdiction,'" "alleging fraud against the California judges does not address Defendants' personal jurisdiction argument. There is no basis to haul Defendants into an Arizona court without any contacts or presence in the state. If Plaintiffs believe they were wronged in California courts, they have the right to appeal their cases there. No personal jurisdiction exists over Defendants in Arizona." (Doc. 46 at 2.)

### B. **Necessity Of Addressing Jurisdiction Before Merits**

The Court begins, as it must, with the challenge to its jurisdiction. *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.,* 549 U.S. 422, 430-31 (2007) ("[A] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit (subject-matter jurisdiction) and the parties (personal jurisdiction)."); *Moore v. Maricopa Cnty. Sheriff's Office*, 657 F.3d 890, 895 (9th Cir. 2011) ("[T]he Supreme Court has specifically instructed that a district court must first determine whether it has jurisdiction before it can decide whether a complaint states a claim.").

The Court begins with the question of personal jurisdiction because it is straightforward and dispositive. *Sinochem*, 526 U.S. at 431 ("[A] federal court has leeway

to choose among threshold grounds for denying audience to a case on the merits.") (internal quotation marks omitted); *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 588 (1999) ("Where, as here, however, a district court has before it a straightforward personal jurisdiction issue presenting no complex question of state law, and the alleged defect in subject-matter jurisdiction raises a difficult and novel question, the court does not abuse its discretion by turning directly to personal jurisdiction.").

      C.    **Personal Jurisdiction**

A defendant may move to dismiss for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). "In opposing a defendant's motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that jurisdiction is proper." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015) (citation omitted). "Where, as here, the defendant's motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Id.* (citations and internal quotation marks omitted). "[U]ncontroverted allegations must be taken as true, and conflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor," but "[a] plaintiff may not simply rest on the bare allegations of the complaint." *Id.* (cleaned up).

"Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1141 (9th Cir. 2017) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014)). "Arizona law permits the exercise of personal jurisdiction to the extent permitted under the United States Constitution." *Id.* (citing Ariz. R. Civ. P. 4.2(a)). Accordingly, whether this Court has "personal jurisdiction over Defendants is subject to the terms of the Due Process Clause of the Fourteenth Amendment." *Id.*

"Constitutional due process requires that defendants 'have certain minimum contacts' with a forum state 'such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Id.* (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Minimum contacts exist "if the defendant has

- 4 -

continuous and systematic general business contacts with a forum state (general jurisdiction), or if the defendant has sufficient contacts arising from or related to specific transactions or activities in the forum state (specific jurisdiction)." *Id.* at 1142 (internal quotation marks omitted).

Plaintiffs do not contend that Defendants are subject to general jurisdiction in Arizona (and Defendants have established, at any rate, that they are not). (Doc. 11-6 [Newcomb declaration]; Doc. 11-7 [Waxler declaration].) Thus, the Court must apply the Ninth Circuit's three-prong test to determine whether Defendants have sufficient contacts with Arizona to be subject to specific jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable.

*Id.* "The plaintiff bears the burden of satisfying the first two prongs of the test." *Id.* (internal quotation marks omitted). "If the plaintiff fails to satisfy either of these prongs, personal jurisdiction is not established in the forum state." *Id.* "If the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Id.*

D. **Analysis**

1. Purposeful Direction

As noted, the first prong of the test for specific jurisdiction involves an assessment of whether each defendant purposefully directed his activities toward the forum state or purposefully availed himself of the privilege of conducting activities there. *Morrill,* 873 F.3d at 1142. Courts "generally apply the purposeful availment test when the underlying claims arise from a contract, and the purposeful direction test when they arise from alleged

tortious conduct." *Id.* Here, all of Plaintiffs' claims sound in tort: Counts One and Two are civil rights claims under 42 U.S.C. § 1983 and/or *Bivens*; Count Three is a claim for abuse of process; Count Four is a claim for "Fraud upon the Court, Lying Under Oath"; Count Five is a claim for intentional infliction of emotional distress; Count Six is a claim for "Deprivation of Property Without Due Process of Law"; Count Seven is a claim for "Denial of Access to Courts"; Count Eight is a claim for malicious prosecution; Count Nine is a claim for breach of fiduciary duty; and Count Ten is a claim for "Vicarious Liability and Direct Negligence of Law Firms." (Doc. 1 at 12-35.) Thus, the purposeful direction test applies, which requires each defendant to have "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Morrill*, 873 F.3d at 1142 (internal quotation marks omitted). "'[R]andom, fortuitous, or attenuated contacts' are insufficient to create the requisite connection with the forum." *Id.* (quoting *Burger King*, 471 U.S. at 475).

As for the first component of the purposeful direction test, "[t]he meaning of the term 'intentional act' in our jurisdictional analysis is essentially the same as in the context of intentional torts; namely, the defendant must act with the 'intent to perform an actual, physical act in the real world.'" *Picot*, 780 F.3d at 1214 (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 806 (9th Cir. 2004)). Here, Defendants' intentional acts are their litigation-related conduct during the First Federal Action.

Next, the "express aiming" component of the purposeful direction test looks to whether the allegedly tortious conduct was "expressly aimed" at the forum. *Id.* This inquiry is fact-specific, but the Court is guided by the principle that it "must focus on the defendant's contacts with the forum state, not the defendant's contacts with a resident of the forum." *Id.* Notably, "the plaintiff cannot be the only link between the defendant and the forum." *Walden*, 571 U.S. at 285. Here, Plaintiffs are the only such link. This is insufficient, because "a tort must involve the forum state itself, and not just have some effect on a party who resides there." *Morrill*, 873 F.3d at 1145.

The final component of the purposeful direction tests requires that the injury

suffered by the plaintiff be "tethered" to the forum state in some "meaningful way." *Picot*, 780 F.3d at 1215. The "potential foreseeability of some incidental harm" to Plaintiffs in Arizona is, on its own, insufficient to establish purposeful direction. *Morrill*, 873 F.3d at 1145. Here, Plaintiffs' alleged injuries are "entirely personal to [them] and would follow [them] wherever [they] might choose to live or travel." *Picot*, 780 F.3d at 1215.

2. <u>Arising Out Of Or Relating To Defendants' Forum-Related Activities</u>

For similar reasons, Plaintiffs have not met their burden as to the second prong of the specific jurisdiction inquiry—whether their claims arise out of or relate to Defendants' forum-related activities. As with the purposeful direction analysis, the "proper lens" for this analysis is "whether the *defendant's* actions connect him to the *forum*." *Walden*, 571 U.S. at 289. "[T]he plaintiff cannot be the only link between the defendant and the forum." *Id.* at 285. Because Defendants' challenged activities consist of litigation activity in a California lawsuit, their only link to this forum is Plaintiffs.

Plaintiffs have thus failed to meet their burden on the second prong. Because Plaintiffs are required to meet their burden on both prongs, *Morrill*, 873 F.3d at 1142, the Court lacks personal jurisdiction over Waxler, Newcomb, and Kaufman Dolowich Voluck LLP, all of whom are dismissed for that reason.

3. <u>Plaintiffs' Other Arguments</u>

Although the analysis as to Waxler, Newcomb, and Kaufman Dolowich Voluck LLP could end there, the Court notes that the only fleeting arguments related to personal jurisdiction raised by Plaintiffs in their complaint and response brief are unavailing. As noted, the complaint cites a non-existent case for the proposition that all 19 defendants in this action are subject to personal jurisdiction in Arizona pursuant to the "national contacts" test. (Doc. 1 at 3 ¶ 5.) But the "national contacts analysis is appropriate" only in cases where foreign defendants are sued under a statute that "authorizes nationwide service of process," such that due process demands only "a showing of minimum contacts with the United States" as to these defendants "before a court can assert personal jurisdiction." *Go-Video, Inc. v. Akai Elec. Co., Ltd.*, 885 F.2d 1406, 1416 (9th Cir. 1989). That is not the

situation here. Meanwhile, to the extent Plaintiffs contend in their response brief that personal jurisdiction rules should not be applied in a manner that "make[s] litigation so gravely difficult and inconvenient that a party unfairly is at a severe disadvantage in comparison to his opponent" (Doc. 38 at 8), this policy argument cannot override the Court's obligation to apply the settled Ninth Circuit and Supreme Court precedents discussed above.

II.     The Second Motion To Dismiss

The next pending motion is a motion to dismiss filed by five defendants (Samani, Johannson, Lewis Brisbois Bisgaard & Smith LLP, Rosado, and Zumbrunn Law Corporation) for lack of subject-matter jurisdiction, lack of personal jurisdiction, lack of venue, improper service, and failure to state a claim. (Doc. 12.) As with the previous motion, the Court will begin by addressing personal jurisdiction because it is dispositive.

As an initial matter, none of the five Defendants is subject to general jurisdiction in Arizona. (Doc. 12 at 10-11.) As for specific jurisdiction, the analysis is essentially identical to the first motion—purposeful direction is lacking because Defendants' only role was litigating in the First Federal Action (and, in Rosado's case, the State-Court Probate Action) and Plaintiffs' claims do not arise out of or relate to Defendants' forum-related activities. Plaintiffs make no effort to show otherwise in their response brief (Doc. 39), which appears to be identical to their briefs responding to the other motions to dismiss. (*See also* Doc. 49 at 1 [Defendants' reply, noting that "Plaintiffs fail to cite a single allegation in their Complaint for purposes of demonstrating that this Court can exercise personal jurisdiction over any defendant in this case"].)

Accordingly, the Court lacks personal jurisdiction over Samani, Johannson, Lewis Brisbois Bisgaard & Smith LLP, Rosado, and Zumbrunn Law Corporation, all of whom are dismissed from this action.

III.    The Third Motion To Dismiss

The next pending motion is a motion to dismiss filed by seven defendants (Judge Rogan, Judge Gilleece, Judge Garcia-Rodrigo, Judge Mann, Overton, Frazier-Krane, and

Cummings, McClorey, Davis, Acho & Associates, P.C.) for lack of personal jurisdiction, lack of venue, lack of subject-matter jurisdiction, failure to state a claim, and pursuant to an array of immunity and jurisdictional doctrines. (Doc. 13.) As with the previous two motions, the Court will begin by addressing personal jurisdiction because it is dispositive.

As an initial matter, none of the seven Defendants is subject to general jurisdiction in Arizona. (Doc. 13 at 5.) As for specific jurisdiction, the analysis is essentially identical to the first two motions—purposeful direction is lacking because Defendants' only role was participating in the First Federal Action and/or in the State-Court Probate Action and Plaintiffs' claims do not arise out of or relate to Defendants' forum-related activities. Plaintiffs make no effort to show otherwise in their response brief (Doc. 36), which appears to be identical to their briefs responding to the other motions to dismiss.

Accordingly, the Court lacks personal jurisdiction over Judge Rogan, Judge Gilleece, Judge Garcia-Rodrigo, Judge Mann, Overton, Frazier-Krane, and Cummings, McClorey, Davis, Acho & Associates, P.C, all of whom are dismissed from this action.

IV.     The Fourth Motion To Dismiss

The next pending motion is a motion to dismiss filed by Hannah. (Doc. 24.) Although Hannah focuses most of his arguments on the sufficiency of Plaintiffs' service attempt, Hannah also "object[s] to the jurisdiction of the Court over the person of Defendant Hannah." (*Id.* at 2.) Plaintiffs do not address this jurisdictional challenge in their response (Doc. 37) and Hannah elaborates in his reply that personal jurisdiction is lacking because he "maintains no meaningful contacts with Arizona. He resides in California, practices exclusively in California, and has never conducted business in Arizona. His allegedly improper conduct occurred entirely in California courts regarding California property under California law. Plaintiffs' only asserted connection is their own residence in Arizona—exactly what *Walden* holds insufficient for jurisdiction. They identify no conduct by Hannah expressly aimed at Arizona." (Doc. 45 at 3.)

As with the previous three motions, the Court will begin by addressing personal jurisdiction because it is dispositive. Hannah is not subject to general jurisdiction in

1 Arizona for the reasons stated in his declaration (Doc. 24-1) and motion papers and the
2 specific jurisdiction analysis is essentially identical to the first three motions—purposeful
3 direction is lacking because Hannah's only role was litigating in the State-Court Probate
4 Action and Plaintiffs' claims do not arise out of or relate to Hannah's forum-related
5 activities. Plaintiffs make no effort to show otherwise in their response brief. (Doc. 37.)
6 Accordingly, the Court lacks personal jurisdiction over Hannah, who is dismissed
7 from this action.
8 V.     Motion To Amend
9 In their responses to the various motions to dismiss, Plaintiffs request leave to
10 amend in the event of dismissal. (Docs. 36, 38, 39.) Additionally, on November 21, 2024,
11 Plaintiffs filed a formal motion for leave to file an amended complaint (Doc. 32) and lodged
12 a copy of the proposed First Amended Complaint ("FAC") (Doc. 33). The FAC would add
13 many more defendants, including the United States of America, the United States District
14 Court for the District of California, the State of California, various state and federal judges
15 in California, and the attorneys and law firms who have appeared in this action. (Doc. 33
16 at 8-11.) Only eight of the proposed new defendants in the FAC—the attorneys and law
17 firms who have appeared in this action—are alleged to be residents of Arizona. (*Id.* at 9
18 ¶¶ 30-37.) Some of the current Defendants have filed responses in opposition to the
19 amendment request (Docs. 44, 48), and Plaintiffs have filed a reply (Doc. 58).
20 Plaintiffs' request for leave to amend is governed by Rule 15(a) of the Federal Rules
21 of Civil Procedure, which "advises the court that 'leave [to amend] shall be freely given
22 when justice so requires.'" *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th
23 Cir. 2003) (citation omitted). "This policy is 'to be applied with extreme liberality.'" *Id.*
24 (citation omitted). Thus, leave to amend should be granted unless "the amendment: (1)
25 prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in
26 litigation; or (4) is futile." *AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946,
27 951 (9th Cir. 2006). Additionally, "[a] district court should not dismiss a pro se complaint
28 without leave to amend unless it is absolutely clear that the deficiencies of the complaint

could not be cured by amendment." *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012).

Although, as explained in prior orders (*see, e.g.,* Doc. 29 at 2; Doc. 31 at 7), these principles mean that *pro se* litigants should ordinarily be afforded at least one grant of leave to amend, that approach is not absolute. Having carefully reviewed the proposed FAC, the Court concludes in its discretion that leave to amend should be denied both on futility grounds and because amendment is being sought in bad faith.

Beginning with futility, most of the defendants in the FAC would be subject to dismissal for lack of personal jurisdiction for the same reasons the Court has just granted the four pending motions to dismiss. (The claims against those defendants are also futile for many other reasons, as outlined in the motions to dismiss and in the responses to the motion for leave to amend, but it is unnecessary to delve into those additional reasons here.)

The Court acknowledges that, in their reply, Plaintiffs articulate what appears to be a new theory as to why Arizona should be deemed to possess personal jurisdiction over all of the defendants in the complaint and proposed FAC—because "[w]hen all available forums in a state have been corrupted through documented bribery and constitutional violations, the traditional personal jurisdiction analysis must yield to the supreme mandate of providing access to justice." (Doc. 58 at 4.) This argument is unavailing. None of the cases cited in Plaintiffs' reply—including *Marbury v. Madison*, 5 U.S. (1 Cranch) 137 (1803), and *Cooper v. Aaron*, 358 U.S. 1 (1958)—comes close to supporting the radical proposition that, if a litigant believes the entire state and federal judiciary of one state would be biased against that litigant, it is permissible to file suit in a different state and for that other state to automatically exercise personal jurisdiction over the named defendants.

That leaves the eight proposed new defendants in the FAC who are alleged to be residents of Arizona. Even assuming those proposed defendants would be subject to general personal jurisdiction in Arizona, the claims in the FAC against those defendants are futile for a variety of reasons, including that their challenged conduct—which consists of filing successful motions to dismiss in this action—cannot remotely be considered tortious or otherwise actionable.

1 These considerations dovetail with the bad-faith analysis. It is apparent to the Court that Plaintiffs are pursuing this action in bad faith. Plaintiffs cannot keep filing new lawsuits, naming all of the earlier defendants, plus the judges, attorneys, and law firms that participated in the most recent action, each time they are dissatisfied with the result of a previous lawsuit. *Rupert v. Bond*, 2013 WL 5272462, *18 (N.D. Cal. 2013) ("The fact that . . . he has repeatedly sued opposing counsel in each of his respective lawsuits, suggests that Plaintiff is bringing this action in 'bad faith' in response to the California and Oregon judgments."). "While courts are generally protective of persons appearing pro se, that does not mean that pro se litigants are entitled to flagrantly abuse the judicial process." *Smith v. Pryor Cashman LLP*, 2022 WL 18284666, *10 (C.D. Cal. 2022).

VI. <u>Motion For Default Judgment</u>

As explained above, the four motions to dismiss have resulted in the dismissal of 16 of the 19 defendants in this action, and Plaintiffs have not been granted leave to file an amended complaint.

That leaves three defendants—Buccinio, Mauro, and Judge McCormick. Plaintiffs previously filed proofs of service as to Buccinio and Mauro[2] and then filed an application for entry of default against those two defendants, which the Clerk granted. (Docs. 7, 8, 9.) Based on those developments, Plaintiffs have filed a motion for default judgment against Buccinio and Mauro. (Doc. 10.) Plaintiffs seek $22 million in compensatory and punitive damages, among other remedies. (*Id.* at 3.)

---

[2] Other defendants have raised serious concerns about the validity and accuracy of Plaintiffs' proofs of service. (*See, e.g.*, Doc. 12 at 3 ["Plaintiffs did not effectuate valid service of process on Defendants. The Proof of Service affidavits assert that each process server 'personally served the summons on the individual[s].' Those are blatantly false assertions, as two of the defendants are businesses, not 'individuals,' and no authorized agent for either business is identified as accepting service. Further, as to the individuals, the process server claims he served Samani, Johansson, and Rosado at '633 West 5th Street, Suite 4000, Los Angeles, California 90071' on August 23, 2024. Yet, that never happened. None of them were at the Lewis Brisbois' office that day (and Defendant Rosado does not even work for Lewis Brisbois)."]; Doc. 24 at 2 ["On August 23, 2024, [Plaintiffs] attempted to incorrectly serve Defendant Randal P. Hannah by serving papers to Kaufman Dolowich LLP, whom did not have authority to accept service on Defendant Hannah's behalf."].) Although these allegations are concerning, it is unnecessary to delve further into the service issues here because other grounds exist for dismissal.

"When entry of judgment is sought against a party who has failed to plead or otherwise defend, a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties." *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). Thus, "when a court is considering whether to enter a default judgment, it may dismiss an action *sua sponte* for lack of personal jurisdiction." *Id.* Plaintiffs have failed to establish that the Court possesses personal jurisdiction over Buccinio and Mauro for the same reasons they have failed to establish the existence of personal jurisdiction over any of the other now-dismissed Defendants. Accordingly, Plaintiffs' motion for default judgment is denied and Buccinio and Mauro are dismissed, *sua sponte*, for lack of personal jurisdiction.

## VII.     Judge McCormick

This leaves one final defendant, Judge McCormick. Plaintiffs previously filed an asserted proof of service as to Judge McCormick (Doc. 7 at 4), then filed two applications for entry of default against Judge McCormick (Docs. 40, 55). In the second application, Plaintiffs baselessly speculated that the "[p]lausible cause" for the delay in resolving their first application was "the private interests" of the undersigned judge "in collusion with Defendant Douglas F. McCormick." (Doc. 55 at 2 n.1.)[3] And after filing the second application, Plaintiffs filed a "Notice of Ongoing Obstruction of Justice" in which they accused the Clerk of Court of engaging in a "deliberate refusal to perform a non-discretionary duty required by law [which] constitutes a clear obstruction of justice." (Doc. 57 at 2, emphasis omitted.)

In fact, the Clerk of Court properly declined to grant Plaintiffs' applications for default as to Judge McCormick because the asserted proof of service as to Judge McCormick is ineffective. That document (Doc. 7 at 4) states that Judge McCormick was personally served, but even assuming that is true,[4] Plaintiffs overlook that under Rule 4(i)(3), "[t]o serve a United States officer or employee sued in an individual capacity for

---

[3] This is not the first time Plaintiffs have made baseless accusations of judicial misconduct. In an earlier motion, Plaintiffs accused the Court of denying an extension request because "money has already changed hands in this case." (Doc. 25 at 1.)

[4] *See* footnote two *supra*.

- 13 -

an act or omission occurring in connection with duties performed on the United States' behalf (whether or not the officer or employee is also sued in an official capacity), a party *must serve the United States* and *also* serve the officer or employee under Rule 4(e), (f), or (g)." *Id.* (emphases omitted). Here, Plaintiffs have not filed proof of service as to the United States. *Jackson v. DeJoy*, 2022 WL 3268964, *1 (W.D.N.C. 2022) ("A plaintiff must serve the United States when he brings an action against an officer or employee of the United States. Under Rule 4(i) of the Federal Rules of Civil Procedure, to serve the United States a plaintiff must serve the summons and complaint on the United States attorney's office in the district where the action is brought or by registered or certified mail to the civil-process clerk and the Attorney General of the United States. Here, Plaintiff has not provided proof of service of the summons and complaint on the United States attorney's office or the Attorney General of the United States as required by Rule 4(i). Accordingly, Plaintiff's [application for default] must be denied because he failed to show proper service of process on the Defendant.") (citations omitted).

As for how to proceed with respect to Judge McCormick, Rule 4(m) provides that "[i]f a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Here, more than 90 days have elapsed since Plaintiffs filed the complaint and Judge McCormick has not been properly served. Additionally, at the outset of this case, Plaintiffs were provided express notice of the possibility of dismissal for failure to effect timely service. (Doc. 6 at 2 ["Service of the summons and complaint on each defendant must occur within 90 days of filing the complaint. . . . This order serves as an express warning that the Court will dismiss this action, without further notice to Plaintiff(s), with respect to any Defendant that is not timely served."].) Thus, under Rule 4(m), the Court "must" either order dismissal as to Judge McCormick or set a new service deadline as to Judge McCormick. The Court, in its discretion, chooses the dismissal option because Plaintiffs are pursuing this action in bad faith and because extending the service deadline as to Judge McCormick would be

futile—Judge McCormick is not subject to personal jurisdiction in Arizona for all of the reasons discussed above and any tort claim against Judge McCormick would, at any rate, be barred by the doctrine of judicial immunity. *See, e.g., Brooks v. Atwood*, 2017 WL 632046, *3 (C.D. Cal. 2017) (where plaintiff sued various judges based on their adverse rulings in an earlier lawsuit but failed to timely serve those defendants, identifying the futility of the plaintiff's claims against the unserved defendants as a reason why, "[u]nder the circumstances of this case, the Court should not exercise its 'broad discretion' [under Rule 4(m)] to extend the time for service"); *Kennedy v. Grattan Township*, 2007 WL 1108566, *4 (W.D. Mich. 2007) ("The record does not reflect that process has ever been served on [Judge] Servaas, and the time for doing so under Rule 4(m) has expired. Although the court has discretion to extend this time . . . , the court will not do so in this case, because. . . [i]t is patent from the face of the complaint that Judge Servaas has been sued because of his judicial rulings in the district court action in which he was trial judge. Claims against him would therefore be barred by the doctrine of judicial immunity. As formal service would therefore be futile, the court will not extend the time for service, but will dismiss the case against Judge Servaas for lack of service under Rule 4(m).").

Accordingly,

**IT IS ORDERED** that:

1. The first motion to dismiss (Doc. 11) is **granted**. Defendants Waxler, Newcomb, and Kaufman Dolowich Voluck LLP are dismissed for lack of personal jurisdiction.

2. The second motion to dismiss (Doc. 12) is **granted**. Defendants Samani, Johannson, Lewis Brisbois Bisgaard & Smith LLP, Rosado, and Zumbrunn Law Corporation are dismissed for lack of personal jurisdiction.

3. The third motion to dismiss (Doc. 13) is **granted**. Defendants Judge Rogan, Judge Gilleece, Judge Garcia-Rodrigo, Judge Mann, Overton, Frazier-Krane, and Cummings, McClorey, Davis, Acho & Associates, P.C. are dismissed for lack of personal jurisdiction.

4. The fourth motion to dismiss (Doc. 24) is **granted**. The default against Defendant Hannah (Doc. 22) is **lifted** and Defendant Hannah is dismissed for lack of personal jurisdiction.

5. Plaintiffs' motion for leave to amend (Doc. 32) is **denied**.

6. Plaintiffs' motion for default judgment (Doc. 10) is **denied**.

7. Defendants Buccinio and Mauro are **dismissed**, *sua sponte*, for lack of personal jurisdiction.

8. Defendant Judge McCormick is **dismissed** for failure to effect timely service.

9. The Clerk shall enter judgment accordingly and terminate this action.

Dated this 14th day of January, 2025.

_____
Dominic W. Lanza
United States District Judge