**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Christopher Bunker, et al., | No. CV-24-01491-PHX-DWL |
| Plaintiffs, | **ORDER** |
| v. | |
| Douglas F McCormick, et al., | |
| Defendants. | |

On January 14, 2025, the Court issued a lengthy order that resulted in the dismissal of Plaintiffs' complaint and the termination of this action. (Doc. 59.)

On January 28, 2025, Plaintiffs filed a motion entitled "motion for Chief Judge review; motion for reconsideration," requesting that the motion be heard by Chief Judge Zipps. (Doc. 61.) Plaintiffs rely on 28 U.S.C. §§ 144 and 455.

I.  <u>28 U.S.C. §§ 144 and 455</u>

   A.  **Legal Standard**

Under 28 U.S.C. § 455, a judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned" or where, *inter alia*, "he has a personal bias or prejudice concerning a party" or "has a financial interest in the subject matter in controversy or in a party to the proceeding." Section 455 "sets forth no procedural requirements" and "is self-enforcing on the part of the judge"—it "includes no provision for referral of the question of recusal to another judge; if the judge sitting on a case is aware of grounds for recusal under section 455, that judge has a duty to recuse himself or herself."

*United States v. Sibla*, 624 F.2d 864, 867-68 (9th Cir. 1980).

Section 144 is "complementary" to section 455. *Silba*, 624 F.2d at 868. It provides as follows:

> Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge[1] shall be assigned to hear such proceeding.
>
> The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time. A party may file only one such affidavit in any case. It shall be accompanied by a certificate of counsel of record stating that it is made in good faith.

28 U.S.C. § 144.

The "same substantive standard" applies to the two sections, but § 144 "expressly conditions relief upon the filing of a timely and legally sufficient affidavit." *Sibla*, 624 F.2d at 867. Upon the filing of a § 144 motion, a judge must (1) "determine independently whether all the circumstances call for recusal under the self-enforcing provisions of section 455(a) & (b)(1), a matter which rests within the sound discretion of the judge," and (2) "[i]f, after considering all the circumstances, the judge declines to grant recusal pursuant to section 455(a) & (b)(1), the judge still must determine the legal sufficiency of the affidavit filed pursuant to section 144." *Id.* at 868. "[T]he district judge against whom the affidavit is filed may pass upon the legal sufficiency of the facts alleged in the affidavit, but he does not pass upon the truth or falsity of the facts alleged. He must accept the facts alleged as true." *Willenbring v. United States*, 306 F.2d 944, 945-46 (9th Cir. 1962). "He can properly deny the affidavit for insufficiency if the facts, taken as true, do not provide fair support for the contention that statutory bias exists." *United States v. Azhocar*, 581 F.2d 735, 739 (9th Cir. 1978). The facts alleged may not be "mere conclusions and

---

[1] The party filing the affidavit has no "voice or influence in the designation of that other" judge. *Berger v. United States*, 255 U.S. 22, 35 (1921). Thus, Plaintiffs' demand that this case be reassigned to Chief Judge Zipps is ineffective. *See also United States v. Torbert*, 496 F.2d 154, 157 (9th Cir. 1974) (affiant has no "vested right to any particular procedure" in selecting another judge to hear the proceeding).

generalizations." *United States v. Bell*, 351 F.2d 868, 879 (6th Cir. 1965). Averments can be made "on information and belief," *Berger v. United States*, 255 U.S. 22, 34-35 (1921), but "[d]etail of definite time and place and character are an absolute necessity to prevent the abusive use of the statute." *Grimes v. United States*, 396 F.2d 331, 333 (9th Cir. 1968) (cleaned up). The facts alleged in the affidavits, taken as true, must "create reasonable grounds for questioning [the judge's] impartiality." *Sibla*, 624 F.2d at 869.

The statutory words "bias or prejudice" do not encompass "*all* unfavorable disposition towards an individual (or his case)" but rather "connote a favorable or unfavorable disposition or opinion that is somehow *wrongful* or *inappropriate*." *Liteky v. United States*, 510 U.S. 540, 550 (1994). A judge is not subject to disqualification for having "knowledge and the opinion it produced" that has been "properly and necessarily acquired in the course of the proceedings" or "as a result of what they learned in earlier proceedings." *Id.* at 551. "Impartiality is not gullibility. Disinterestedness does not mean child-like innocence." *Id.*

When determining whether the facts alleged in a § 144 affidavit, taken as true, would cause a "reasonable mind [to] fairly infer personal bias or prejudice against [the affiant]," *Grimes*, 396 F.2d at 333, a significant factor[2] is whether the alleged judicial opinion derives from an "extrajudicial source." *Liteky*, 510 U.S. at 554-55. "[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion," as they "cannot possibly show reliance upon an extrajudicial source; and can only in the rarest circumstances evidence the degree of favoritism or antagonism required . . . when no extrajudicial source is involved." *Id.* at 555. Furthermore, "opinions formed by the judge on the basis of facts introduced or

---

[2] "The fact that an opinion held by a judge derives from a source outside judicial proceedings is not a *necessary* condition for 'bias or prejudice' recusal, since predispositions developed during the course of a trial will sometimes (albeit rarely) suffice. Nor is it a *sufficient* condition for 'bias or prejudice' recusal, since *some* opinions acquired outside the context of judicial proceedings (for example, the judge's view of the law acquired in scholarly reading) will *not* suffice. Since neither the presence of an extrajudicial source necessarily establishes bias, nor the absence of an extrajudicial source necessarily precludes bias, it would be better to speak of the existence of a significant (and often determinative) 'extrajudicial source' *factor,* than of an 'extrajudicial source' *doctrine,* in recusal jurisprudence." *Liteky*, 510 U.S. at 554-55.

events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Id.*

B. **Analysis**

Turning first to § 455, a judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned" or where he has "personal bias or prejudice concerning a party" or various financial or familial conflicts. The undersigned has no such bias, prejudice, or conflicts, and the unsupported assertions in Plaintiffs' motion do not provide a basis for reasonably questioning the impartiality of the decisions in this case.[3]

Thus, the Court must determine the legal sufficiency of the affidavits filed pursuant to § 144. Each Plaintiff filed a declaration[4] stating as follows: "I have never threatened any clerk of the United States District Court for the District of Arizona with a lawsuit in connection with case number 2:24-cv-01491-DWL. Throughout all my interactions with court personnel, I have maintained proper decorum and professional conduct." (Doc. 61 at 14-17.) The affidavits contain no other factual allegations. Notably, they contain no allegations concerning the undersigned at all. Taking the sole allegation in the affidavits as true, this does not "create reasonable grounds for questioning [the judge's] impartiality." *Sibla*, 624 F.2d at 869.

---

[3] Plaintiffs' motion accuses the undersigned of participation in "multi-jurisdictional bribery," asserting that the undersigned has "financial obligations to California defendants (bribery)." (Doc. 61 at 3.) The factual predicate for this accusation appears to be the assertion that the undersigned is "a former California State Bar attorney" combined with Plaintiffs' dissatisfaction with the judicial rulings in this action. (*Id.* at 5-10.) Although Plaintiffs' motion and supporting documents total 160 pages, no exhibits appear to hint at any sort of relationship between the undersigned and any defendant in this action, let alone a financial one. Plaintiffs' affidavits do not mention any facts related to bribery, finances, or any kind of relationship between the undersigned and Defendants, and therefore these wildly unsupported accusations have no bearing on the § 144 analysis that follows.

[4] "The primary difference between an affidavit and a declaration is the notary block an affidavit bears, but a declaration does not. Under 28 U.S.C. § 1746, when 'any matter is required or permitted to be supported, evidenced, established, or proved by the sworn declaration, verification, certificate, statement, oath, or affidavit, . . . such a matter may, with life force and effect, be supported, evidenced, established, or proved by unsworn declaration' so long as it is attested under penalty of perjury." *Villery v. Jones*, 2021 WL 5280933, *3 (E.D. Cal. 2021).

Plaintiffs' motion does state that the undersigned "fabricated false allegations in his November 21, 2024 order (Dkt. 31), claiming Plaintiffs had threatened the clerk's office with litigation. He used this manufactured allegation as a pretext to threaten Plaintiffs with sanctions, demonstrating a clear pattern of judicial intimidation against pro se litigants seeking to expose corruption." (Doc. 61 at 5.) This inference is not plausibly supported by the affidavits, which at most establish (taking all factual allegations as true) that Plaintiffs did not, in fact, threaten anyone in the Clerk's Office with a lawsuit. The October 15, 2024 order noted in a footnote that "[t]he Clerk's office has indicted that one of the Plaintiffs threatened to sue a member of the Clerk's office for lodging the amended complaint with the October 8, 2024 date" and "strongly cautioned" Plaintiffs that "harassment of the staff in the Clerk's office will not be tolerated and, if continued, could lead to an order to show cause why such conduct should not be sanctioned." (Doc. 29 at 1-2 n.1.) Even if Plaintiffs never, in fact, threatened to sue anyone in the Clerk's office, that does not impugn the veracity of the assertion that the Clerk's office "indicated" that one of the Plaintiffs had done so. At any rate, a footnote in an order cautioning Plaintiffs that harassment of the Clerk's office will not be tolerated is neither extrajudicial nor indicative of "a deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky*, 510 U.S. at 555.

Plaintiffs have not submitted any "legally sufficient affidavit" requiring that the undersigned "proceed no further." *Sibla*, 624 F.2d at 867; *see also Azhocar*, 581 F.2d at 738 ("Only after the legal sufficiency of the affidavit is determined does it become the duty of the judge to 'proceed no further' in the case."). Therefore, the Court will proceed to consider the motion for reconsideration.

II.   Motion For Reconsideration

"The Court will ordinarily deny a motion for reconsideration of an Order absent a showing of manifest error or a showing of new facts or legal authority that could not have been brought to its attention earlier with reasonable diligence." LRCiv. 7.2(g)(1). Reconsideration is an "extraordinary remedy" that is available only in "highly unusual

- 5 -

circumstances." *Kona Enters., Inc. v. Est. of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000) (internal quotation marks omitted). "Motions for reconsideration are disfavored . . . and are not the place for parties to make new arguments not raised in their original briefs. Nor is reconsideration to be used to ask the Court to rethink what it has already thought." *Motorola, Inc. v. J.B. Rodgers Mechanical Contractors*, 215 F.R.D. 581, 582 (D. Ariz. 2003).

Applying these standards, Plaintiffs' reconsideration request lacks merit. In large part, the January 14, 2025 order concluded that Plaintiffs' claims were subject to dismissal (and that Plaintiffs should not be granted leave to file an amended complaint) because Plaintiffs failed to establish the existence of personal jurisdiction in Arizona over the current and proposed new defendants. The only two developed arguments on the issue of personal jurisdiction in the reconsideration motion are as follows:

(1) "Throughout these proceedings, Judge Lanza has wielded personal jurisdiction as a weapon against justice. Despite Supreme Court precedent clearly establishing this Court's jurisdiction over constitutional violations by California state actors, Judge Lanza manufactured jurisdictional barriers to protect those involved in the underlying fraud. His manipulation of personal jurisdiction doctrine directly contradicts *Casey v. Felder*, which he obviously fails to address in any of his orders." (Doc. 61 at 6.)

(2) "Judge Lanza's treatment of personal jurisdiction exemplifies his corrupt intent. The Supreme Court has consistently held that federal courts have jurisdiction over state actors who violate constitutional rights. *International Shoe Co. v. Washington*, 326 U.S. 310 (1945), and its progeny establish that state actors subject themselves to federal jurisdiction when they engage in conduct that violates federal rights. Judge Lanza's attempt to shield California defendants through manufactured jurisdictional barriers directly contradicts this established law." (Doc. 61 at 10.)

These arguments fail to establish a basis for reconsideration. The Supreme Court's

decision in *Felder v. Casey*, 487 U.S. 131 (1988)—which, the Court presumes, is the case that Plaintiffs were attempting to cite through their references to "*Casey v. Felder*"—does not address personal jurisdiction. Instead, it addresses a distinct legal issue that is "essentially one of pre-emption: is the application of [a] State's notice-of-claim provision to § 1983 actions brought in state courts consistent with the goals of the federal civil rights laws, or does the enforcement of such a requirement instead stand as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress?" *Felder*, 487 U.S. at 138 (cleaned up). *Felder*'s discussion of preemption principles fails to establish the existence of manifest error in the January 14, 2025 order's personal jurisdiction analysis. Meanwhile, to the extent Plaintiffs contend the Court failed to consider some unspecified case that is part of *International Shoe*'s "progeny," the Court stands by its conclusion in the January 14, 2025 order that "[n]one of the cases cited [by Plaintiffs] . . . comes close to supporting the radical proposition that, if a litigant believes the entire state and federal judiciary of one state would be biased against that litigant, it is permissible to file suit in a different state and for that other state to automatically exercise personal jurisdiction over the named defendants." (Doc. 59 at 11.) Nothing in Plaintiffs' reconsideration motion establishes that this conclusion was manifestly erroneous.

The January 14, 2025 order also concluded that Plaintiffs' claims against one defendant, Judge McCormick, should be dismissed for failure to effect timely service. In their reconsideration motion, Plaintiff do not develop any reasoned challenge to the merits of that analysis—that is, Plaintiffs do not contend they properly served Judge McCormick in compliance with the applicable legal standards. Instead, Plaintiffs blame the Court for waiting too long to inform them of the inadequacy of their service efforts. (Doc. 61 at 6-7 ["The extent of Judge Lanza's participation in this scheme became undeniable through his treatment of service issues. Three separate times, Plaintiffs notified the Court of proper service on Defendant McCormick. Each time, Judge Lanza remained strategically silent, waiting months before suddenly claiming service deficiencies. This deliberate withholding of known defects served no legitimate judicial purpose—its only function was to

manufacture grounds for later dismissal while depriving Plaintiffs of the opportunity to cure any deficiencies."].)  This argument ignores that "[d]istrict judges have no obligation to act as counsel or paralegal to *pro se* litigants. . . .  [T]he Constitution [does not] require judges to take over chores for a *pro se* defendant that would normally be attended to by trained counsel as a matter of course." *Pliler v. Ford*, 542 U.S. 225, 231 (2004) (cleaned up).  *See also Weathington v. Hunter*, 316 F. App'x 603, 604 (9th Cir. 2009) (rejecting *pro se* litigant's argument "that the district court did not properly advise him of the deficiencies in his lawsuit" and emphasizing that the district court "was under no obligation to become an advocate for or to assist and guide Weathington, as a pro se litigant, through the trial thicket") (cleaned up); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) ("[W]e do not believe it is the proper function of the district court to assume the role of advocate for the pro se litigant.").  At any rate, Judge McCormick was not served by the service deadline of September 19, 2024 and could have been dismissed at any point thereafter.  Plaintiffs were in no way prejudiced by the delay in the Court's dismissal of Judge McCormick.

Finally, Plaintiffs' criticism of the Court for following Ninth Circuit precedent—"He repeatedly misrepresented Ninth Circuit rulings as 'binding law' . . . ." (Doc. 61 at 5)—does not come close to providing a basis for granting reconsideration.

Accordingly,

**IT IS ORDERED** that Plaintiffs' motion for judicial reassignment and reconsideration (Doc. 61) is **denied**.  This case remains **closed**.

Dated this 31st day of January, 2025.

Dominic W. Lanza
United States District Judge